[No. 23327. Department One. October 29, 1931.]

E. WEAVER, *Respondent,* v. OSCAR G. HEATON *et al., Appellants.*[1]

[1]Reported in 4 P. (2d) 521.

*Henry J. Gorin,* for appellants.

*J. W. A. Nichols* and *E. J. McCarthy,* for respondent.

BEELER, J.—On April 18, 1929, the appellants, Oscar G. Heaton and Elma L. Heaton, his wife, made, executed and delivered their promissory note payable to the order of the West Lands Realty Corporation in the sum of one thousand dollars. The note provided for the payment of monthly installments of twenty-five dollars beginning on May 15, 1929, and a like sum on the 15th day of each succeeding month, with a further provision that the entire note should be paid within two years from date. The note further provided that, if any of the installments were not paid when due, the whole sum specified in the note, together with interest thereon, should become immediately due and payable at the option of the holder.

Shortly after the execution of the note, the payee, by its president Alfred P. Brown, endorsed the note in blank, and the plaintiff became the holder thereof for collection only. The defendants defaulted in the payment of the installments which became due on May 15 and June 15, 1929, and on July 8 following, the plaintiff brought suit on the note. The defendants appeared in the action, and in their answer admitted they were the makers of the note, but defended upon two grounds: fraud and failure of consideration.

The cause was tried to the court and a jury, and at the conclusion of the testimony the court directed the jury to return a verdict in favor of the plaintiff, upon the ground that the defendants' evidence was insufficient to establish fraud or want of consideration. Thereafter, the defendants interposed a motion for a new trial, which was overruled, and judgment was entered on the verdict, from which they have appealed.

The controlling question to be determined is whether the trial court erred in refusing to submit to the jury for their determination the question whether the appellants had established fraud and want of consideration as alleged in their cross-complaint.

Prior to and on April 5, 1929, the appellants were the owners of an apartment house subject to a first mortgage of $14,500 and a contract of $7,600, and one Baum and wife were the owners of a house at 1145 Seventeenth avenue, subject to a first mortgage of $5,000 and a contract of $1,730, and a cottage at 857 Gwinn place, subject to a first mortgage of $3,600 and a contract of $1,460. All of these properties are located in Seattle, Washington.

Prior to and on April 1, 1929, the West Lands Realty Corporation was engaged, as agent and broker, in buying, selling and exchanging real estate in Seattle, Washington. Alfred P. Brown, A. E. Heaton and Thomas R. Coppage were the trustees and officers of the corporation. Coppage was its secretary and general manager.

On or about April 1, 1929, Coppage opened negotiations with the appellants for the purpose of inducing them to exchange or trade their property for the properties owned by Baum and wife. Coppage acted as the agent or broker for the appellants and Baum and wife. As a result of these negotiations, an exchange contract or agreement was entered into on April 5, 1929, between the appellants and Baum and wife whereby these parties agreed to exchange or trade their respective properties above referred to, provided the title, upon examination, proved satisfactory to the respective parties. The contract in part provided:

"The property of each party has been carefully inspected by the other, and no agreements or representa-

tions pertaining thereto or to this transaction have been made, save such as are stated herein.''

The appellants examined the Baum properties between the dates of April 5 and April 15, 1929, and on April 18 signed the note, at which time the deal was closed.

The appellants contend that they were induced to enter into the exchange contract through the fraudulent misrepresentations of Coppage. They claim that Coppage represented that the Baum properties were of the reasonable market value of $18,500, whereas said properties were worth not to exceed the sum of $6,500, and that Coppage represented that the mortgage on the ''Gwinn place'' property was a ''straight five-year mortgage, on the principal of which nothing was due until April 1, 1931,'' whereas a payment of $200 on the principal became due April 23, 1929, and the further sum of $108 on the interest, which the appellants were forced to and did pay on July 22, 1929.

We find no merit in this contention. The evidence shows that Mr. Heaton is a lawyer of wide experience who has practiced his profession in the city of Seattle for twenty-five years. He examined the properties owned by Baum and wife on several occasions before executing the note on April 18. On direct examination, Mr. Heaton was asked if he knew what the actual and reasonable market value of the ''Seventeenth avenue'' property was on April 18, 1929, and answered: ''It wasn't worth anything above the encumbrances,'' and when asked as to the value of the ''Gwinn place'' property he stated: ''It was $6,500.'' Thus it is apparent that Mr. Heaton, before he executed the note on April 18, recognized that the Baum properties had little or no value above the encumbrances.

Nor is there any merit in appellants' contention that they were misled as to the character of the en-

cumbrances against the "Gwinn place" property, because it appeared on the face of the contract that that property was subject to a first mortgage of $3,600 and a contract of $1,460. Moreover, when Mr. Heaton was asked concerning the examination of the title to the property he acquired in the exchange, he answered: "Yes, I examined the title as shown by the insurance policies." Furthermore, Mrs. Heaton testified:

"Q. What was your attitude toward the deal as proposed for the exchange of the Baum property? A. I was reluctant about entering into it. Q. Why? A. Because of the heavy encumbrances upon the property, I was afraid we couldn't handle them. Q. Why didn't you think you could handle the Baum properties which were offered you? A. They were heavily encumbered and we were a little bit in doubt as to the salability. I was running an apartment house at the time and I had all I could handle."

The appellants next contend that they were induced to enter into the exchange contract on the representations of Coppage that he could re-sell "the Baum properties for them within one year, or at least before taxes became delinquent." Even if we assume that these statements were made by Coppage as testified to by the appellants, at best they were mere expressions of opinion. Coppage, in the parlance of the street, was bragging and puffing. Surely Mr. Heaton, a mature and seasoned lawyer, was not misled by the statements made by Coppage. We are satisfied that the appellants were in no wise persuaded to enter into the contract by reason of any representations made by Coppage to the effect that he could re-sell the Baum properties within one year. As Mrs. Heaton so tersely put it: "We were a little bit in doubt as to their salability." In any event, the testimony of the appellants totally fails to indicate the price, terms, or on what conditions the properties were to be re-sold by Coppage.

Furthermore, on April 3, the appellant, Mr. Heaton, addressed a letter to the West Lands Realty Corporation in which he stated: "If the deal for exchange of properties is consummated through your office, I agree to pay you a commission of $1,000." By this letter, Mr. Heaton promised to pay a commission of one thousand dollars if the deal was made, but he made no reference whatsoever to a re-sale. Had the understanding been that Coppage was to effect a re-sale of the Baum properties which Heaton at that time was contemplating acquiring, surely he would have made some reference thereto.

On April 5, the West Lands Realty Corporation acknowledged this letter by saying:

"As commission on the sale of your property . . . it will be satisfactory to us to receive in full $1,000 as commission; such commission to be paid as follows: by deliverance to our corporation a note in the amount due in one year at 7% and payable $25 or more including interest per month with the *understanding that in case certain properties taken in trade by you in this deal are not sold within the year,* and it is not convenient at that time for you to pay the balance of this note, the note will be extended for an additional year upon the same terms."

The above letter was signed by Coppage on behalf of the West Lands Realty Corporation, but he made no reference whatever to a re-sale. The letter states that, should Coppage be unable to effect a re-sale of the Baum properties within one year, then the note would be extended for an additional year. Thirteen days after the above letter was written, the note was executed and was made payable in two years, instead of one year as the parties at first had apparently contemplated, which indicates that the understanding, if any, between Coppage and the appellants in relation to a re-sale of the properties was abandoned prior to or at the time of the execution of the note on April 18.

From our examination of the record, we are satisfied that there was no evidence nor reasonable inference from evidence to sustain a judgment based on fraud or want of consideration as alleged in the appellants' cross-complaint, and hence the trial court properly withdrew the case from the consideration of the jury.

■ And finally, the appellants contend that the trial court erred by entering judgment in favor of the respondent, inasmuch as she was merely a nominal party, and that the actual parties were Brown, A. E. Heaton and Coppage. A complete answer to this argument is found in the fact that Brown, A. E. Heaton and Coppage were joined as parties plaintiff. They have had their day in court and hence are estopped from asserting any claim against the appellants on the note in the future.

The judgment appealed from is affirmed.

TOLMAN, C. J., MITCHELL, HERMAN, and PARKER, JJ., concur.

